KENNON, Judge.
In this suit Arthur T. Yeates and his wife, Mrs. Sylvia O. Yeates, seek to recover damages from the Yellow Cab Company of Shreveport, Inc., in the amount of approximately $50,000.00 for injuries received by them as passengers in a cab belonging to the defendant.
Defendant at the outset of the trial admitted liability and made a tender to plaintiffs of $2500.00, which was refused by plaintiffs.
The Trial Court rendered judgment in favor of Mr. Yeates for $506.00 and in favor of Mrs. Yeates for $7,000.00. Defendant appealed.
On the day 'of the accident, which .occurred on a residential street in Shreveport, Mrs. Yeates, who was daily expecting the arrival of her first born child, was returning in defendant’s taxicab from a prenatal examination visit to Dr. R. D. Crow. After the accident she was rushed to a hospital where Dr. Crow found her suffering from fractures of the fibula and tibia of the left leg about one inch about the ankle, abrasions of the left knee, contusions of the right chest, and she was' in a highly nervous condition, doubtless due to concern over her pregnancy and the possible ill effect on the unborn child, which- fortunately was delivered normally on the eighteenth day after the accident.
Six days after the delivery she returned home from the hospital, but she remained in bed for something over a month. At the time -of the injury she was suffering from bilateral edema, which condition was aggravated in the lower left leg by the injury. A short leg cast was placed over the fracture. This cast was tightened daily as the edema subsided and nine days later ■she was placed in a long leg cast. This cast was replaced when she left the hospital with a second long cast which was permitted to remain for an additional five weeks. An elastic bandage was then applied and she was given physiotherapy treatment. At the time of the trial, some six months after the accident, the swelling of the lower leg still persisted:
After the cast was removed, Dr. Crow determined that there had been a jamming of the upper shaft of the tibia into the lower fragment of the bone, causing a kick-up of the inner surface of the lower fragment, with an inward turning of the foot.' His opinion was that the usefulness of this ankle joint would likely be eventually destroyed due to the twisted angle and the unusual distribution of the weight load.
Dr. Macpherson, an orthopedic surgeon, examined and x-rayed the injured limb some four and one-half months after the accident. . He recommended that she continue using her ankle and that she would get some relief from swelling by wearing an elastic sock. He found “a deformity to the left ankle that consists chiefly of malalignment of the lower end of the tibia that produces an inclined joint surface of the ankle, so that her heel is more prominent when the foot is carried in toe high and heel down position. Also the foot is displaced forward on the leg as result of this inclination to the lower tibia.”
In further explanation of her injuries, he stated: “She had a considerable amount of thickness of the capsule of the joint and swelling from the knee down, including the entire foot. She has a bad gait because of the malposition of the foot and bone.”
He stated that the bone in the region of the injury was “what we call the can- *75 cellous bone and it is somewhat like a beehive or an automobile radiator. That is, if you squeeze it it collapses just that way. • There is no elasticity to bring it back.” He stated that she still had considerable disability; that she would have difficulty on inclines, particularly in walking up; that her ability for prolonged standing or walking would be limited; that pain and discomfort would 'result from activity; 'that she would not walk normally; that she was unable to sustain her body weight on the ball of her left foot.
He explained that while her ankle joint was still mobile, the joint movement was in the wrong place and that eventually an ankle fusion would ■ be necessary. This operation and the outlook he explained as follows:
“In fusions of the ankle, there would be an operative scar and, of course the risk that would go with any surgical procedure, which is a little higher in bone surgery because of the extremely poor results which occur if infection takes place. Bone has very poor ability to heal and the operative risk in bone surgery is higher than in soft tissue.
“Besides wearing of the scar and risk involved in the operation there will be .a very slightly noticeable limp in -a fused ankle. It is very slight. In a young woman it might be objectionable. The very small amount of motion that is lost at the ankle, joint must be assumed by the other joints underneath it. The added stress thrown upon them to take up that amount of motion frequently leads to breakdown of those joints in the top of the foot. When we cannot bend the ankle something has to bend and the patient generally gives in by letting the knee bend a little bit. Too great amount of mobility develops in the front of the foot and those joints- were not made to take it. So we always consider it worth while to warn the patient that as the years go on he should avoid too much weight and avoid a strenuous amount of motion in order to try to preserve those joints left in the middle of the foot. Because when degenerative change takes place there you have a stiff forefoot that is-.almost peg leg.
“The outlook is not good.”
Dr. Macpherson added that in the performance of fusion operations, particularly in ankles, it is frequently necessary to operate a second time to encourage a solid fusion. His estimate of cost of future operations was twelve to fifteen hundred dollars.
The District Judge summarized Mrs. Yeates’ condition and future prospects, and fixed the amount of damages due in the following paragraphs:
“It will be seen from the foregoing that Mrs. Yeates’ injuries are serious and permanent. It is likewise clear that she has endured much pain and suffering and that she will continue to do so for an unpredictable time to come. It is not certain that she will ever be free of pain and discomfort. The alternative of fusion is a serious operation and is not certain of success. Even if successful, it will produce a limp and some disability from impaired fimction which is likely to be increased with age and body change. She is condemned to permanent lameness and curtailed capacity for normal physical activity and work, the extent of which cannot be predicted with accuracy. In the life of a young housewife as she is, doing her own work, such a condition takes on larger proportions.
(( * * * * * *
“We are admonished that in assessing damages, the current value of the dollar i:n purchasing power is one of the factors which the Court should consider. We have concluded that an allowance of $7,~ 000.00 to Mrs. Yeates is proper.”-
Our conclusion is that' the testimony in the record'sustains the $7,000.00 allowance to Mrs. Yeates.
The testimony likewise justifies the Trial Judge’s award to Mr. Yeates of $100.00 for his injuries, which -included an abrasion of his forehead extending about four and one-half inches alpng his scalp, a bruised right shoulder and some subsequent headaches and soreness; of *76 $231.00 for medical and hospital expenses and of $175.00 to the doctor who treated Mrs. Yeates.
The judgment appealed from is affirmed, with costs.